IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SEP 1 8 2008

T. MICHAEL SCOTT, SUFFERN
ASSOCIATES, LLC, CATHERINE C.
DAVIS, AND MICHAEL D. DAVIS,

                               Plaintiff,

          v.

BRANCH BANKING AND TRUST
COMPANY, successor by merger to
BRANCH BANKING AND TRUST
COMPANY OF VIRGINIA,

                               Defendant.

Action No. 3:08–CV–357

<u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Plaintiffs' Motion to Remand, Defendant's

Motion to Transfer Venue, and Defendant's Motion to Dismiss.  For the reasons stated

below, the Motion to Remand shall be DENIED, the Motion to Transfer Venue shall be

GRANTED, and this case shall be TRANSFERRED to the United States District Court for the

Western District of Virginia.

1.    <u>Background</u>

      This matter revolves around a failed real estate venture.  Plaintiffs[1] were investors in

Resource Pointe Partners, LLC ("RPP"), a Virginia limited liability company with *its*

principal place of business in Greensboro, North Carolina and the stated purpose of owning

---

[1] Scott, Mr. Davis, and Mrs. Davis are all individuals domiciled in and citizens of Virginia.
Members of Suffern are individuals domiciled in and citizens of Florida.

1

membership interests in and serving as a member of Bridgewater Point Partners, LLC ("BPP"). BPP is a Virginia limited liability company established to manage dealings with water front property located in Franklin County, Virginia commonly known as the Bridgewater Pointe Property (the "Property").

At various points in February 2006, each of the Plaintiffs executed a Subscription Agreement ("Agreement") with RPP and, simultaneous with each of their Agreements, invested in the Property various sums of money totaling $750,000.[2] All of the Agreements were formally accepted on March 31, 2006. Pursuant to each Agreement, the funds invested by Plaintiffs were to be deposited in escrow at a commercial bank pursuant to an Investment Guide dated February 8, 2006 (the "Guide").

In accordance with the Guide, Plaintiffs' funds were eventually placed in an account with BB&T (the "Account"). BB&T is organized under the laws of North Carolina with its principal place of business in that state. Plaintiffs allege this made Defendant the escrow agent for each of them pursuant to the Agreements and the Guide. As a result, Plaintiffs maintain that Defendant had contractual and fiduciary duties to hold the escrow funds in accordance with the Agreements. Plaintiffs claim that according to each Agreement and the Guide, the funds Plaintiffs invested were to be returned with accrued interest if RPP failed to sell a specified number of units at the Property with the collective value of $1,500,000. The

---

[2]The complaint alleges Scott invested $500,000, Suffern invested $200,000, and Mr. and Mrs. Davis jointly signed an Agreement and invested $50,000.

Agreements and the Guide required that RPP sell the requisite number of units by February 28, 2006, although RPP could extend the deadline to June 30, 2006.[3]

Evidently, RPP never obtained the $1,500,000 level of sales required by the Agreements and the Guide.[4]  That fact notwithstanding, Defendant allegedly failed to return to any of the Plaintiffs the funds and corresponding interest as required by the Agreements and the Guide.  As a result of failure, Plaintiffs assert that Defendant has breached both contractual and fiduciary duties to each of them resulting in the loss of the investment funds and any applicable interest.  However, Plaintiffs do not allege that it had a separate agreement with Defendant to do so or that Defendant actually had any specific knowledge of the Agreements or the Guide.

Nearly two years after the above events, but prior to the filing of the original Complaint in the Circuit Court of the City of Richmond, BPP filed a voluntary petition for relief under Title 11 of the Bankruptcy Code.[5]  According to BB&T, the Account, which is titled in BPP's name, has been listed as property of the bankruptcy estate.  The Account, according to BB&T, is governed by a Commercial Bank Services Agreement ("Commercial

---

[3]There is a discrepancy between the Agreements, which stated a contingency of 15 units being sold, and the Guide, which stated a contingency of 12 units being sold.

[4]Plaintiffs allege that RPP only obtained a total of $885,000 in subscriptions including Plaintiffs' subscriptions–meaning that subscriptions independent of Plaintiffs investment totaled $135,000.

[5]The pending bankruptcy case is titled In re Bridgewater Pointe Partners, LLC, Bankruptcy Case No. 08-70682 (Bankr. W.D. Va. filed Apr. 16, 2008).

Agreement") that makes BPP liable to BB&T for litigation costs arising related to the Account.

Plaintiffs served BB&T through its registered agent on May 19, 2008. On June 9, 2008, Defendant filed Notice of Removal. A week later, on June 16, 2008, Defendant filed its Motion to Dismiss simultaneously with its Motion to Transfer Venue. Plaintiff filed a Motion to Remand this matter to state court on June 25, 2008.

2.    Analysis

    A.    Motion to Remand

Defendant has properly removed this matter based upon diversity jurisdiction. "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts . . . have original jurisdiction, may be removed by the defendant . . . to the district court . . . for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, "[a]ny such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Further, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction does not exist unless "both sides of the controversy are completely diverse." See General Technology Applications, Inc. v. Exro LTDA, 388 F.3d 114, 120 (4th Cir. 2004). The Court must determine the citizenship of the parties at the time the complaint is filed and at the time of removal. See Rowland v.

4

Patterson, 882 F.2d 97, 99 (4th Cir. 1989). All other times are inconsequential for purposes of diversity jurisdiction analysis. See Owens-Illinois, Inc. v. Rapid Am. Corp., 124 F.3d 619, 626 (4th Cir. 1997). In determining the citizenship of a limited liability company, or "LLC," the Court must look to the citizenship of all the members of the LLC. See General Technology Applications, Inc., 388 F.3d at 120 (stating LLC was a citizen of Columbia, South America and Virginia based on its membership). In contrast, the Court must determine a corporation's citizenship based on both the state of incorporation and the corporation's principal place of business. See 28 U.S.C. § 1332(c)(1); see also Athena Automotive, Inc., 166 F.3d 288, 290 (4th Cir. 1999) (construing 28 U.S.C. § 1332).

The instant case clearly satisfies the requirements for diversity jurisdiction. First, Plaintiffs allege damages well over ten times the $75,000 amount in controversy requirement. See Compl. at ¶¶ 18-44 (demanding compensatory damages totaling $750,000, plus applicable interest, and a total of $1,500,000 in punitive damages). Second, all parties have diverse citizenship: Scott, Mrs. Davis, and Mr. Davis are all individuals domiciled in and citizens of Virginia; the members of Suffern are all individuals domiciled in and citizens of Florida; and BB&T is a corporation organized under the laws of and having its principal place of business in North Carolina. Moreover, the limitation of Section 1441(b) does not apply.

In light of the fact that this Court clearly has diversity jurisdiction, Defendant need not prove separate grounds upon which the Court might base subject matter jurisdiction.

B.    Motion to Transfer Venue

To determine whether transfer would be proper under § 1404(a), courts typically

consider (1) the plaintiff's choice of venue; (2) the location of witnesses and evidence;

(3) the parties' convenience; and (4) the interest of justice.[6] See, e.g., Corry v. CFM

Majestic, Inc., 16 F. Supp. 2d 660, 666 & n.14 (E.D. Va. 1998).  The party requesting the

transfer bears the burden of showing that the transfer is warranted.  Cognitronics Imaging

Sys. v. Recognition Research, Inc., 83 F. Supp. 2d 689, 696 (E.D. Va. 2000).

1)    Plaintiffs' Choice of Venue

Courts generally give "substantial weight" to a plaintiff's choice of forum, unless the

initial choice of forum "is not the plaintiff's 'home forum,' and the cause of action bears little

or no relation to the chosen forum." Lycos, Inc. v. TiVo, Inc., 499 F. Supp. 2d 685, 692

(E.D. Va. 2007) (citing Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d

741, 743 (E.D. Va. 2003)).  "If there is little connection between the claims and [the chosen

forum], that would militate against plaintiff's chosen forum and weigh in favor of transfer to

a venue with more substantial contacts." Id. (citing Koh v. Microtek Int'l, Inc., 250 F. Supp.

2d 627, 635 (E.D. Va. 2003)).  Moreover, where the "cause of action is at best only

tenuously related to [the chosen forum], plaintiffs' initial venue of choice will not impede

transfer if the relevant § 1404(a) factors point to another forum." Verosol B.V. v. Hunter

Douglas, Inc., 806 F. Supp. 582, 593 (E.D. Va. 1992).

---

[6] The Court has also considered (1) the cost of obtaining the attendance of witnesses; (2) the
availability of compulsory process; and (3) the interest of having local controversies decided
at home.  Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 592 (E.D. Va. 1992)
(internal citations omitted).  Neither side argues that these factors are relevant.

6

Here, Plaintiffs' initial choice of venue, the Richmond Circuit Court, is not a home venue. Plaintiffs point out that "the City of Richmond was the closest, available state-law forum for Plaintiffs' state-law claim against BB&T" because "[Defendant's] resident agent was located in Richmond." See Pls.' Mem. Opp. Def.'s Mot. Transfer Venue at 5. The JTH Tax, Inc. court, however, identified the home forum as the forum in which the plaintiff resided, not the location where the defendant could be served. See JTH Tax, Inc. at 736. Therefore, in determining whether the initial forum chosen by Plaintiffs is a "home forum" and due "substantial weight," the Court should focus on the Plaintiffs' location, not the location of the Defendant or its agent. Scott, Mr. Davis, and Mrs. Davis live in Great Falls, Virginia, where Defendant conducts business and could have been sued in the Circuit Court of the County of Fairfax. As Defendant notes, Richmond has no connection to the Plaintiffs or to the disputes in this case. As such, Plaintiffs did not choose a "home forum" that is due substantial weight, and that choice "will not impede transfer if the relevant § 1404(a) factors point to another forum," see Verosol B.V., 806 F. Supp. at 593. Accordingly, the Court should look to convenience and access to witnesses, convenience of the parties, and the interest of justice to determine whether to transfer this case to the Western District of Virginia. See JTH Tax, Inc., 482 F. Supp. 2d at 736.

### 2)   The Location of Witnesses and Evidence

The convenience of witnesses and access to sources of proof is "often dispositive" in § 1404(a) motions. Koh, 250 F. Supp. 2d at 636. Generally, a party seeking to transfer a case for the sake of a witness's convenience must provide an affidavit identifying the witness

7

and the testimony that he would provide. See Bd. of Trs., 702 F. Supp. at 1258 (ruling that showing that several necessary witnesses were located in a proposed transferee forum was not sufficient to demonstrate the transferee forum would be more convenient). The Court has relaxed that requirement in cases in which the movant provided uncontroverted evidence that witnesses were located where the alleged unlawful activities took place – the "center of activity" of the case. See, e.g., Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) (holding that, since a majority of the documentary and testimonial evidence was located in the proposed transferee forum, venue transfer was proper). The "center of activity" test is a shorthand method for applying § 1404(a); it is an attempt to mitigate the difficulty of producing specific information about witnesses early in a case, when any motions to transfer must be filed. See Koh, F. Supp. 2d at 636. Although this approach has been used primarily in patent cases, see id. (internal citation omitted), it has been used in other contexts, see, e.g., Hanover Ins. Co. v. Paint City Contractors, Inc., 299 F. Supp. 2d 554, 557–58 (E.D. Va. 2004) (applying that test in a suit for a breach of contract).

Here, Defendant has identified witnesses who would be inconvenienced if this case proceeds in this Court as opposed to the Western District of Virginia. These witnesses include members of BPP, not a party to this case, members of RPP, the entity through which Plaintiffs purchased an interest in BPP, and other witnesses likely to be called by Defendant. Moreover, as Defendant notes, BPP is currently participating in bankruptcy proceedings in the Western District of Virginia and most of BPP's assets, books, records, managers, and

attorneys are located there. Additionally, RPP lists its principal place of business as Greensboro, North Carolina, which is much closer to Roanoke than it is to Richmond.

Plaintiffs retort that RPP and BPP bear only tangential relationships to the instant matter and could not conceivably produce or testify as to anything that will affect Plaintiffs' claim against Defendant. Moreover, Plaintiffs claim Defendant fails to carry its burden because it fails to identify with specificity which individual witnesses would be inconvenienced and the relevance of the witnesses' testimony.

Based on the reasoning in Koh, this Court finds that this factor weighs in favor of Defendant despite the absence of specific detailed information about witnesses or their testimonies. Defendant has sufficiently demonstrated, at this pre-discovery stage, that the Western District of Virginia houses most of the documentary evidence and presents a more convenient location for individuals presenting testimonial evidence in this case. BPP has its principal place of business there. Any witnesses that would be called from that entity presumably live in or around Roanoke, and BPP is subject to bankruptcy proceedings there. Plaintiffs allegedly transferred the money at issue to the Account in Defendant's Roanoke branch, which is also subject to jurisdiction as part of the bankruptcy estate, there. The failed real estate project is much closer to Roanoke than it is to Richmond. Finally, Roanoke would be closer for any witnesses from RPP who presumably live near or around Greensboro, North Carolina.

9

3)    The convenience of the parties

Although the parties' convenience is important, a court may not justify shifting the burden of travel from a defendant to a plaintiff on the basis of this factor. Bd. of Trs., 702 F. Supp. at 1259. Courts generally evaluate this factor by considering the parties' residences. JTH Tax, Inc., 482 F. Supp. 2d at 738. Defendant states that its witnesses and relevant documents are located in the Western District. This obviously makes that forum more convenient than Richmond for Defendant. On the other hand, Plaintiffs argue that transfer to the Western District would be greatly inconvenient to them because Roanoke, Virginia is 237 miles from their residences in Great Falls, Virginia, while Richmond is only 117 miles from their residences. This obviously makes the Western District inconvenient for Plaintiffs requiring 120 extra miles in travel. Therefore, the Court should look to the other relevant factors in deciding whether a different venue is appropriate.

4)    The Interest of Justice

This factor is a "broad category" that includes a variety of concerns, including "pendency of a related action." See JTH Tax, Inc., 482 F. Supp. 2d at 738. "[T]he interest of justice factor encompasses public interest factors aimed at systemic integrity and fairness." Lycos, Inc., 499 F. Supp. 2d at 695 (citing Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)). "The most prominent elements of systemic integrity are 'judicial economy and the avoidance of inconsistent judgments.'" Byerson, 467 F. Supp. 2d at 635.

10

These considerations weigh in favor of transfer. BPP's ongoing bankruptcy proceedings are occurring in the Western District. Moreover, there exists the possibility of inconsistent results, or at least redundant litigation activity, regarding the events underlying Plaintiffs' claim. The Account in dispute is listed as part of BPP's bankruptcy estate over which the Western District has exercised jurisdiction. BPP claims it owns the Account; Plaintiffs claim they own the proceeds in the Account. Defendant claims that if Plaintiffs indeed own the proceeds in the Account, BPP owes them indemnification for damages as a result of mishandling the Account in accordance with the Commercial Agreement. It seems clear that what happens in the instant matter will undoubtedly affect what happens in the bankruptcy proceeding because Defendant's claim for indemnification will result in additional liability for BPP, the bankruptcy debtor subject to jurisdiction in the Western District of Virginia. Judicial efficiency counsels for transfer because common factual and legal issues exist between the instant case and the bankruptcy case. See U.S. Ship Management, Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 937 (E.D. Va. 2005) ("The interest of justice weighs heavily in favor of transfer when related actions are pending in the transferee forum."). Although Plaintiffs argue that the claim is against Defendant, not against the Account, the obligations of BPP will quite likely be affected by the outcome of the instant matter. This intertwining weighs in favor of transfer to the Western District. Cf. Blanton v. IMN Financial Corp., 260 B.R. 257 (M.D.N.C. 2001); Irwin v. Beloit Corp., 246 B.R. 421, 435 (Bankr. N.D. Ala. 2000); Sudbury, Inc. v. Dlott, 149 B.R. 489, 493 (Bankr. N.D. Ohio 1993) (noting the "general presumption that all matters involving a bankruptcy

11

should be tried in the court in which the bankruptcy is pending"); <u>Nixon Mach. Co. v. Roy Energy, Inc.</u>, 27 B.R. 871, 873 (Bankr. E.D. Tenn. 1983) ("[T]he court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction.").

In conclusion, most of the factors the courts consider suggest that transferring Plaintiffs' suit under § 1404(a) to the Western District of Virginia would be appropriate.

D.      <u>Transfer pursuant to § 1412</u>

Finding transfer appropriate under § 1404, the Court need not address the parties' arguments regarding transfer pursuant to § 1412.

E.      <u>Motion to Dismiss</u>

Finding transfer appropriate, the Court need not address the parties' arguments regarding the Motion to Dismiss.

3.      <u>Conclusion</u>

For the reasons stated above, the Court will DENY Plaintiffs' Motion to Remand and GRANT BB&T's Motion to Transfer Venue.

It will be SO ORDERED.

> /s/
> James R. Spencer
> Chief United States District Judge

ENTERED this _18th_ day of September 2008

12